# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| WILLIE CHARLES JEMISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 12-758-IPJ-JHE |
| | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, INC. et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the court are defendants' special report (doc. 20), which the court construes as a motion for summary judgment (doc. 26), exhibits in support thereof, and plaintiff's response to defendants' motion (doc. 27). For the reasons discussed below, the court finds that defendants' motion is due to be granted.

## STATEMENT OF FACTS

On March 8, 2012, plaintiff Willie Jemison filed a complaint alleging that he suffered Eighth Amendment violations while an inmate at St. Clair Correctional Facility (doc. 1). The magistrate judge ordered defendants to file a written report reviewing plaintiff's claims (doc. 13). In that order, the court identified plaintiff's claims as follows:

1

> Plaintiff suffers from Hepatitis C. While incarcerated at the Saint Clair Correctional Facility, he was prescribed medications which caused severe side effects. He received shots every Wednesday and took pills three times per day. These medications caused him to suffer from fainting spells, severe and constant itching, stomach pains, and vomiting when he ate. The plaintiff complained to the defendants, but was told that nothing could be done. The defendants did nothing and the plaintiff continued to suffer.
>
> In September of 2010, the plaintiff became very sick as a result of the medicine prescribed to him by the defendants. The plaintiff was taken to Brookwood Medical Center where surgery was performed and a pace maker was implanted in his heart. The treating physicians at the hospital told the plaintiff that the medications he had been prescribed had caused his severe problems and could have killed him had he not made it to the hospital on time. The Brookwood physicians prescribed medications for plaintiff, and told him not to take any of the medications that had been prescribed for him at the prison.
>
> The defendants were deliberately indifferent to his serious medical needs, which nearly resulted in his death.

Order for Special Report p. 3 (doc. 13). The court ordered plaintiff to notify it within twenty days if he had any objections to this characterization of his complaint (*id.* at 3), and plaintiff voiced none. Plaintiff was unable to identify an address for defendant Harper and although plaintiff named "CMS medical staff" as a defendant, fictitious party practice is not authorized by the Federal Rules. Accordingly, this court dismissed those defendants without prejudice. Order of September 23, 2013 p. 1 (doc. 23).

## **STANDARD OF REVIEW**

A court may grant a movant's motion for summary judgment "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010); *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

In determining whether to grant the motion, the court must view "the evidence and all reasonable inferences from that evidence. . . in the light most favorable to the nonmovant." *Jean-Baptiste*, 627 F.3d at 820 (11th Cir. 2010); *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). However, the court need only draw those inferences "to the extent supportable by the record." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010). Once met by the moving party, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## DISCUSSION

### I.  Exhaustion of State Remedies

Defendants' motion is due to be granted because plaintiff failed to exhaust St. Clair's administrative remedies before filing his complaint. As the Eleventh Circuit has noted,

> Section 1997e(a), enacted as part of the PLRA, provides that a prisoner must exhaust all available administrative remedies before bringing a federal action challenging prison conditions. The PLRA seeks to eliminate unwarranted interference with the administration of prisons in order to afford corrections officials time and opportunity to address complaints before allowing the initiation of a federal case. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust.

*Parzyck v. Prison Health Svcs., Inc.*, 627 F.3d 1215, 1217–18 (11th Cir. 2010) (citations and quotation marks omitted).

According to the affidavit of Colleen Oakes, who served as the Health Services Administrator for St. Clair from November 2009 until December 2011, St. Clair's medical staff maintained a grievance procedure well-known to inmates. Under that procedure, the grievance process began when an inmate submitted a Medical Grievance form to the Health Services Administrator who then reviewed

the request and provided the inmate a written response within five days. Oakes Aff. p. 5 (doc. 20-6). The written response also included a statement on how an inmate may appeal a grievance decision. *Id.* at 5–6.

Jemison underwent surgery to have an artificial pacemaker implemented on September 8, 2010 at Brookwood Medical Center. Hood Aff. p. 9 (doc. 20-1). Dr. McKinney and Dr. Dagget discharged Jemison from Brookwood on September 9, 2010. *Id.* St. Clair medical staff terminated Jemison's Hepatitis C Treatment on September 29, 2010. *Id.* at 10. Jemison was transferred from St. Clair to Limestone Correctional Facility on July 12, 2012 and paroled from Limestone on or about April 22, 2013. *Id.* at 11. No evidence suggests that Jemison filed a grievance over his hepatitis treatment to St. Clair officials or St. Clair medical staff at any point between September 2010 and his release in April 2013.[1] In fact, Oakes states that Jemison "never submitted a Medical Grievance related to the allegations in his Complaint." Oakes Aff. p. 6 (doc. 20-6). Thus, because Jemison failed to utilize St. Clair's own grievance procedures prior to filing the instant lawsuit, he did not exhaust his administrative remedies and the defendants' motion for summary

---

[1] Plaintiff did submit one Medical Grievance on August 20, 2010 requesting a "front line profile" to allow him to pass diabetic inmates in the pill call line. Oakes submits that she would not enter a "front line profile" for Jemison because diabetic inmates needed to receive their medication shortly before eating and that Jemison did not appeal that decision pursuant to St. Clair's grievance procedure. Oakes Aff. p. 6 (doc. 20-6).

judgment is due to be granted.

## II.   Eighth Amendment Claim

Additionally, Jemison's Eighth Amendment deliberate indifference claim is meritless. To establish a deliberate indifference claim, a plaintiff must meet both an objective and subjective test:

> To state an Eighth Amendment claim under § 1983, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct. Under the objective component, a prisoner must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety. To satisfy the subjective component, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.

*Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citations and quotation marks omitted). Jemison's deliberate indifference claim fails for two reasons: (1) he cannot establish that defendants had subjective knowledge of a risk of serious harm, and (2) Jemison cannot establish that defendants disregarded that risk. As discussed in part I *supra*, no evidence suggests that plaintiff notified the defendants of any problems he had with his treatment. He filed no grievances other than the request for a front line profile. Accordingly, defendants could not have been aware of the risk of the serious harm. Dr. Hugh Hood, who has been

6

employed with CMS since November 2007, swore by affidavit that during an April 2010 check-up, Jemison said he was "doing ok"; during a May 2010 check-up, Jemison stated he felt "pretty good"; during a second May 2010 check-up, Jemison claimed he was "doing fine"; at a July 16, 2010 check-up, Jemison said he was "doing ok"; at a July 23, 2010 evaluation, Jemison said he was "tolerating treatments well"; and during an August 25, 2010 check-up, Jemison again said he was "doing ok." Hood Aff. pp. 6–8 (doc. 20-1).

The only complaint Mr. Jemison voiced prior to his heart episode in September of 2010 was at a July 16, 2010 evaluation when Jemison said he experienced itching and nausea "off and on." *Id.* at 7. According to Hood, these symptoms were not uncommon for patients undergoing Hepatitis C treatment and Jemison stated that he was "hanging in there." *Id.* On the one occasion that Jemison did voice serious health concerns, September 6, 2010, the CMS staff acted swiftly to provide Jemison medical treatment. After Jemison reported that he experienced dizziness and weakness while exercising, the staff evaluated Jemison, ordered an EKG, and ordered a follow-up EKG the following day after the first EKG was abnormal. When the second EKG was abnormal, the staff immediately transferred Jemison by ambulance to the Brookwood Medical Center emergency room. *Id.* at 8–9. Thus, before September 6, 2010, defendants had no subjective

7

knowledge of the serious risk. Clearly, then, defendants could not have disregarded a risk of which they had no knowledge. Because Jemison cannot establish that defendants were deliberately indifferent to his risk of harm, he fails to meet the subjective prong of the Eighth Amendment analysis, and the court must grant summary judgment in favor of defendants.

## CONCLUSION

Based upon a consideration of the foregoing, the court finds that defendant's motion for summary judgment (doc. 20) is due to be **GRANTED**. The court shall grant said motion by separate Order.

**DONE** and **ORDERED** this 7th day of July 2014.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE